UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF KENTUCKY
PADUCAH DIVISION
CIVIL ACTION NO. 5:12-CV-00070-TBR

ZACHARY AMOS LAMB                                                                 Plaintiff

v.

JACK TELLE, *et al.*                                                             Defendants


**MEMORANDUM OPINION AND ORDER**

This matter is before the Court upon Plaintiff Zachary Lamb's Motion for Summary Judgment. (Docket No. 63.) Defendants, Phil Hazel and Rodney Hill, have responded. (Docket No. 65.) Plaintiff Lamb has replied. (Docket No. 66.) This matter is now fully briefed and ripe for adjudication. For the following reasons, the Court will **DENY** Plaintiff Zachary Lamb's Motion for Summary Judgment.

Defendants, Phil Hazel and Rodney Hill, also move for Summary Judgment. (Docket No. 67.) Plaintiff has responded. (Docket No. 70.) Defendants have replied. (Docket No. 72.) This matter is now fully briefed and ripe for adjudication. For the following reasons, the Court will **GRANT** Defendant Hazle's Motion For Summary Judgment as to all claims asserted against him. The Court will **DENY IN PART**, as to the Fourteenth Amendment excessive force, assault, and battery claims, and **GRANT IN PART**, as to all other claims, Defendant Hill's Motion for Summary Judgment.

## BACKGROUND

In this action Plaintiff Zachary Lamb ("Lamb") alleges that Defendants Calloway County Jailer Phil Hazle and Deputy Jailer Rodney Hill (collectively "Defendants") violated his constitutional rights while he was detained in the Calloway County Jail and asserts claims for unlawful restraint, false imprisonment, and assault and battery. Specifically, Plaintiff alleges violations of his First, Fourth, Fifth, Sixth, Ninth, and Tenth Amendments to the United States Constitution and Civil Rights Act of 1871.[1] The Defendants are employees of the jail. The Plaintiff initially alleged two specific pepper spraying incidents: May 22, 2011, and January 17, 2012.[2] There is no video evidence available for the May 22, 2011 incident. (Docket No. 65, Page 2.) There is video evidence available for the January 17, 2012 incident.

Presently before the Court is Lamb's third motion for summary judgment and Defendants' motion for summary judgment. Plaintiff alleges that evidence submitted with the motion conclusively proves that the Defendants violated his rights and he is entitled to summary judgment as a matter of law. This evidence includes a video of the January 17, 2012 incident and jail guidelines concerning the use of pepper spray. The Court denied the first motion as premature because discovery was on-going and the evidentiary record incomplete. (*See* Docket No. 27.) The Court also denied his second motion because it was not properly supported by evidence in the record at that time. (Docket No. 55.)

---

[1] Plaintiff also generally alleges Defendants violated his constitutional rights, without a specific reference to the exact right was violated.

[2] As will be discussed below, Plaintiff is no longer pursuing any claims on the basis of the May 22, 2011 incident.

On January 17, 2012, Plaintiff was arrested on a warrant issued by the Calloway County District Court for contempt of court and taken to Calloway County Jail. He was placed in an isolation cell which contained a video camera for observation of inmates in the cell. Shortly after being placed in the cell Plaintiff admits that he began "thrashing about in frustration." (Docket No. 69, Page 102.) Specifically, Plaintiff began hitting walls/the door, hitting the camera, and obstructing the camera with what appears to be moist toilet paper. Deputy Hill entered the cell, removed the obstruction and removed all of Plaintiff's belongings except for his bed mat and clothing. After Hill left, Plaintiff continued hitting walls/the door, hitting the camera, and obstructing the camera. Hill returned again and removed the obstruction and confiscated Plaintiff's jail issued flip-flops. Subsequently, Plaintiff continued to strike the camera again and again and began kicking the door.[3]

Defendant alleges that Plaintiff was warned multiple times to leave the camera alone and stop kicking the door of his cell. Plaintiff states he doesn't recall that instruction, but states "anything is possible." (Docket No. 69, Page 111-12.) The video does not give any indication that a warning was given, although admittedly the video does not have audio. At approximately **18.20.19**, Deputy Hill entered the cell and pepper sprayed Plaintiff for the **first time**. (Video of January 17, 2012 Incident.) After the use of the peppery spray, Plaintiff continued to hit walls, kick the door, and throw

---

[3] Plaintiff appears to allege all this frustration was a result of his being arrested, which he feels was wrongful, for contempt of court and because he was unable to see his visitor. Plaintiff states the striking of the camera, walls, and doors, was an attempt to get the officers' attention.

water within the cell, allegedly at a speaker box.[4]  (*Id.* at 18:24-25.)  Deputy Hill then entered the cell and pepper sprayed Plaintiff a **second time**.  (*Id.* at **18:25:23**.)

Despite the second use of pepper spray, Plaintiff continued his previous behavior of kicking/hitting the door and hitting the wall.[5]  At **18:29:00** Deputy Hill, along with an unidentified person, again enter the cell.  Deputy Hill appears to pepper spray Plaintiff a **third time**[6] and then rubs the pepper spray in.[7]

After the incident on 18:29:00, Plaintiff appears to yell through the door.  Other than that, Plaintiff does not continue to "misbehave."  However, he does strike the door a single time with both of his hands at 18:30:21.  Immediately thereafter, Deputy Hill enters the cell and appears to deploy pepper spray a **fourth time** and/or rub the pepper spray in.[8]  (*Id.* at **18:30:24.**)

Subsequently, Plaintiff reinitiates hitting the door and appears to yell through the door.  (*Id.* at 18:31:00–18:31:35.)  Deputy Hill then enters the cell and appears to deploy pepper spray a **fifth time** and/or rub the pepper spray in.  (Id. at **18:35:00**.)

Plaintiff continues to hit the door of his cell and yell through the door.  Plaintiff then dips his head in the cell toilet, even though there was a decontamination bucket

[4] The Defendant alleges that what Plaintiff was throwing water on was actually a speaker box in the upper right corner of the cell.  The video does not confirm or negate this assertion.  Plaintiff does not appear to contest this.

[5] The Court notes that during this time it appears Plaintiff had some sort of a conversation with someone, presumably Deputy Hill, through the door.  (Video of January 17, 2012 Incident, 18:27:00-18:28:00).  Plaintiff appears to be yelling and very upset.

[6] It is unclear from the video whether Deputy Hill actually used pepper spray.

[7] Plaintiff has alleged that during this incident Hill rubbed the peppery spray in, presumably to increase its effectiveness.  The video, at least for purposes of defeating Defendants' motion for summary judgment, supports this assertion.

[8] Depending on one's view of the prior incident at 18:29:00, this could be considered the third time Plaintiff was pepper sprayed.  Of course, viewing the facts in the manner most favorable to Plaintiff, the Court will consider this the fourth time he was pepper sprayed.

available in the cell.[9]  Thereafter, Plaintiff stood, removed his clothing and dumped the decontamination bucket over his entire body.  Defendants allege that Plaintiff then indicated to Deputy Hill he was ready to cooperate and therefore was removed from the cell and allowed to shower in another part of the jail.

STANDARD

Summary judgment is appropriate where "the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law."  FED. R. CIV. P. 56(a).  In determining whether summary judgment is appropriate, a court must resolve all ambiguities and draw all reasonable inferences against the moving party.  *See Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986).

"[N]ot every issue of fact or conflicting inference presents a genuine issue of material fact."  *Street v. J. C. Bradford & Co.*, 886 F.2d 1472, 1477 (6th Cir. 1989).  The test is whether the party bearing the burden of proof has presented a jury question as to each element in the case.  *Hartsel v. Keys*, 87 F.3d 795, 799 (6th Cir. 1996).  The plaintiff must present more than a mere scintilla of evidence in support of his position; the plaintiff must present evidence on which the trier of fact could reasonably find for the plaintiff.  *See id.* (citing *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 252 (1986)).  The plaintiff may accomplish this by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence . . . of a

_____

[9] It appears Deputy Hill provided Plaintiff with a decontamination bucket after every use of pepper spray, which would be consistent with the Court's reading of jail guidelines.

genuine dispute . . . ." FED. R. CIV. P. 56(c)(1).  Mere speculation will not suffice to defeat a motion for summary judgment; "the mere existence of a colorable factual dispute will not defeat a properly supported motion for summary judgment.  A genuine dispute between the parties on an issue of material fact must exist to render summary judgment inappropriate." *Moinette v. Elec. Data Sys. Corp.*, 90 F.3d 1173, 1177 (6th Cir. 1996).

## DISCUSSION

### I.    May 22, 2011 Incident Claims

As an initial matter, Plaintiff testified in his deposition he is no longer pursuing any claims in relation to the May 22, 2011 incident since he failed to sue the individuals actually involved in that incident.[10]  (Docket No. 69, Page 99-100.)  Accordingly, the Court's analysis of the parties' motions for summary judgment will be limited to the January 2012 incident.    All claims related to the May 22, 2011 incident are **DISMISSED** without prejudice.

### II.    January 17, 2012 Claims Against Defendants in Their Official Capacity

An official capacity suit will be construed as a suit directly against the local governmental unit.  Because Defendants are employees of the Calloway County Jail,

---

[10] In further support of this decision, the Court notes the only evidence of this incident is Plaintiff's own testimony, making it unlikely it would have survived a motion for summary judgment.  Furthermore, Plaintiff himself appears to acknowledge abandonment of this claim because all the briefs filed with the Court focus exclusively on the January 2012 incident and do not mention the May 2011 incident.

these official capacity claims would be construed as claims against Calloway County.[11] Defendants argue that the Eleventh Amendment and governmental sovereign immunity bar all claims asserted against them in their official capacities. The Court will address the official capacity claims under federal and state law separately, as the analysis is different between the two schemes.[12]

a. Federal Claims

To assert a § 1983 claim against a defendant such as Calloway County, the Court must determine: (1) whether the plaintiff's harm was caused by a constitutional violation; and (2) if so, whether the county is responsible for that violation. *Collins v. City of Harker Heights, Tex.*, 503 U.S. 115, 120 (1992). Assuming Plaintiff could prove that any of the Defendants violated his constitutional rights, in order to recover against Calloway County Plaintiff would be required to prove that the actions or inactions of Defendants were done pursuant to a "policy or custom" attributable to Calloway County. *Monell v. New York Depart. Social Services*, 436 U.S. 658, 694 (1978). The policy or custom must play a part in the violation of federal law—a causal connection is required. Considerably more proof than a single incident is necessary to establish both the requisite fault on the part of the municipality, and the casual connection between the

---

[11] It is not clear from Plaintiff's briefing whether or not he was actually asserting claims against Defendants in their official capacity. The Court only addresses these official capacity claims out of an abundance of caution.

[12] As the Court has previously stated, "[t]he breadth of the Eleventh Amendment's protection of state governments and agencies from suit under federal law determines the result. This is an entirely different question than the extent of the immunity Kentucky state common law extends to its own governmental agencies from suit under state law." *Meredith v. Jefferson Cnty. Bd. of Educ.,* 2007 WL 3342258, *2 (W.D.Ky. Nov. 9, 2007). "Kentucky state courts concede that 'state treatment of sovereign immunity is not relevant to a determination of whether a party is immune from § 1983 liability because only federal jurisprudence is controlling on this issue.'" *Id.*

policy and the constitutional deprivation. *Oklahoma City v. Tuttle*, 471 U.S. 808, 823 (1985).

In this case, Plaintiff has pled only a single incident and has not put forth any evidence of an unconstitutional custom, policy, or practice. Therefore, the official capacity federal § 1983 constitutional claims against Calloway County will be dismissed and summary judgment **GRANTED** to Defendants on those claims.

b. State Claims

A county is a political subdivision of the Commonwealth. Accordingly, it is "cloaked" with sovereign or governmental immunity. *Jones v. Cross*, 260 S.W.3d 343, 345 (Ky. 2008) (quoting *Lexington-Fayette Urban County Gov't v. Smolcic,* 142 S.W.3d 128 (Ky. 2004)). As a result, absent waiver, Calloway County has immunity on Plaintiff's claims. *Id.* Plaintiff has not asserted there was waiver of this immunity. Therefore, summary judgment will be **GRANTED** to Defendants on the state claims against Defendants in their official capacities.

III. Plaintiff's 42 U.S.C. § 1983 Claims Relating to Excessive Force

Section 1983 does not confer substantive rights but merely provides a means to vindicate rights conferred by the Constitution or laws of the United States. *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010). "In addressing an excessive force claim brought under § 1983, analysis begins by identifying the specific constitutional right allegedly infringed by the challenged application of force." *Graham v. Connor,* 490 U.S. 386, 394 (1989). The three constitutional provisions for analyzing an excessive

force claim brought under § 1983 are the Fourth, Eighth, and Fourteenth Amendments. As will become apparent, the Fourteenth Amendment is the appropriate constitutional provision for analyzing Plaintiff's claims.

    a.  <u>Fourth Amendment Claims</u>

The Fourth Amendment's prohibition against unreasonable seizures of a person applies in the context of an arrest or investigatory stop:

> The Fourth Amendment's prohibition against unreasonable seizures of the person applies to excessive-force claims that 'arise in the context of an arrest of investigatory stop of a free citizen,' while the Eighth Amendment's ban on cruel and unusual punishment applies to excessive force claims brought by convicted criminals serving their sentences. When neither the Fourth nor the Eighth Amendment serves to protect citizens, courts have applied the Fourteenth Amendment.

*Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010) (citations omitted). Plaintiff was arrested pursuant to a warrant. The Fourth Amendment protects detainees arrested without a warrant through completion of their probable cause hearing. Since Plaintiff was arrested pursuant to a warrant, the Fourth Amendment does not apply to his claims. Accordingly, the Court will **GRANT** Defendants' motion for summary judgment on the Fourth Amendment claims.

    b.  <u>Eighth Amendment Claims</u>

The Eighth Amendment is only concerned with punishment by the state after it has secured a formal adjudication of guilt in accordance with due process of law,• *Ingraham v. Wright,* 430 U.S. 651, 671 n. 40 (1977), it does not apply to pretrial

detainees.[13] *Bell v. Wolfish,* 441 U.S. 520, 537 n. 16 (1979). At the time of the January 17, 2012 incident, Plaintiff had not been convicted of any crime and was merely a pretrial detainee arrested pursuant to a warrant. Therefore, the Eighth Amendment does not apply to his claims. Accordingly, the Court will **GRANT** Defendants' motion for summary judgment on the Eighth Amendment claims and dismiss these claims.

c. Fourteenth Amendment Claims

Plaintiff was a pre-trial detainee arrested pursuant to a warrant. Accordingly, the Fourteenth Amendment applies to Plaintiff's claims, not the Fourth or Eighth Amendment. The Eighth Amendment applies to prisoners who have actually been convicted and the Fourth Amendment applies to detainees held without probable cause.

However, Defendants argue Plaintiff did not actually assert a Fourteenth Amendment Claim, although they responded to such a claim because it was relevant to Plaintiff's state tort claims of assault and battery. The Court believes that Plaintiff, who is pro se, sufficiently alleged a Fourteenth Amendment claim for the Court to consider it. While not actually citing the Fourteenth Amendment, Plaintiff did state the action arose under 42 U.S.C. § 1983 and generally alleged constitutional violations. Furthermore, Plaintiff specified the specific incidents/actions that he claims gave rise to the constitutional violations: the pepper sprayings on January 17, 2012. This was not a case where a number of grievances from many different incidents were listed and constitutional violations alleged. Here, Plaintiff alleged one specific incident giving rise

---

[13] The Supreme Court has defined a pretrial detainee as someone who has had a "judicial determination of probable cause as a prerequisite to the extended restraint of his liberty following arrest." *Bell v. Wolfish*, 441 U.S. 520, 536 (1979). Plaintiff is a pretrial detainee because he was arrested pursuant to a warrant.

to his claim for a constitutional violation: the pepper sprayings that occurred while he was in the prison cell.

The Sixth Circuit has held the dividing line between Fourth and Fourteenth Amendment protections is whether or not a probable cause hearing has been held:

> On the other hand, if a plaintiff is in a situation where his rights are not governed by either the Fourth or the Eighth Amendment, the Due Process Clause of the Fourteenth Amendment protects the individual against physical abuse by officials. Specifically, '[i]t is clear ... that the Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment.' According to the Supreme Court, a pre-trial detainee is one who has 'had only a judicial determination of probable cause as a prerequisite to [the] extended restraint of [his] liberty following arrest.' •
>
> \* \* \*
>
> There is no principled basis in the text of the Constitution, the precedents of the Supreme Court, or our prior cases for placing a dividing line between protection by the Fourth and the Fourteenth Amendment at the end of custody of the arresting officer, at the completion of booking, or at the initial placement of the arrestee in a jail cell. As the Supreme Court has 'made it clear that *the legal status* of the victim of the excessive force determines [which a]mendment governs his excessive force claims' it would be anomalous for the commencement of the Fourteenth Amendment's protections, by contrast, to hinge upon logistical criteria alone.
>
> Placing the dividing line at the probable-cause hearing for those arrested without a warrant does, however, have a basis in Supreme Court precedent. The Court noted in *dicta* in *Wolfish* that individuals who have *not* had a probable-cause hearing are not yet pretrial detainees for constitutional purposes. Thus, unlike the arrestee's transfer out of the arresting officer's custody or the completion of booking procedures, the probable-cause hearing is a judicial proceeding that affects the 'legal status' of the arrestee, constitutionally authorizing his detention throughout the proceedings against him, just as a guilty verdict affects his 'legal status' by authorizing his detention for the duration of his sentence. Consistency with our pronouncement that 'the legal status of the [plaintiff] determines [which a]mendment governs his excessive

force claims,' requires extending the Fourth Amendment's protection until this change in legal status occurs.

* * *

We therefore join the Ninth and Tenth Circuits in setting the dividing line between the Fourth and Fourteenth Amendment zones of protection at the probable-cause hearing.

Thus, the district court erred in applying the Fourteenth Amendment standard to an arrestee detained following a warrantless arrest prior to a probable-cause hearing.

*Aldini v. Johnson*, 609 F.3d 858, 866-67 (6th Cir. 2010) (citations omitted). Since Plaintiff was arrested pursuant to a warrant and therefore was a pretrial detainee rather than an arrestee or convicted prisoner, his excessive force claim will be analyzed under the Fourteenth Amendment. *See, e.g., Ash v. Boone Cnty., Ky.,* 2011 WL 4431820 (E.D. Ky. Sept. 22, 2011). The Fourteenth Amendment's Due Process Clause protects a pretrial detainee from the use of excessive force that amounts to punishment. *Id.*

In the Sixth Circuit "the law is unsettled[14] as to whether the analysis for a Fourteenth Amendment excessive-force claim and an Eighth Amendment excessive-force claim is the same."[15] *Griffin v. Hardrick*, 604 F.3d 949, 953 (6th Cir. 2010); *see also Leary v. Livingston Cnty.*, 528 F.3d 438, 443 (6th Cir. 2008) (noting "there is room

---

[14] *But see Watkins v. Evans*, 96 F.3d 1449 (6th Cir. 1996) (unpublished disposition) ("As a pre-trial detainee at the time of the incidents complained of, Watkins is entitled to the same protection under the Eighth Amendment by way of the Fourteenth Amendment's Due Process Clause.").

[15] The Court notes that there is a *de minimis* level of imposition of force with which the Constitution is not concerned. *Leary v. Livingston Cnty.*, 528 F.3d 438, 443-45 (6th Cir. 2008). However, as discussed below, the behavior went beyond that *de minimis* level with which the Constitution is not concerned. Specifically, Plaintiff alleges he still had some burning and tingling effects from the sprayings two months later. (Docket No. 69, Page 31.) Plaintiff also appears to claim mental pain and suffering and physical pain from the incident, although he never took medication to treat this pain. *Id* at 36-38. He also alleges he had to wear tree cutting glasses for two months after the spraying because of how bad the light hurt. *Id.* at 38.

The Court also notes that *Leary* was an "unusual" case where the claimant actually stated the defendant's actions "didn't hurt or nothing." *Id.* at 445. Taking the facts in the way most favorable to the Plaintiff, there is a genuine dispute as to whether this was a "minor touching" which the Constitution is not concerned with. *Id.*

for debate over whether the Due Process Clause grants pretrial detainees more protections than the Eighth Amendment does"); *Kee v. Louisville Metro Dep't of Corr.*, 2013 WL 5447766, *2 (W.D. Ky. Sept. 30, 2013). At the least, pretrial detainees are guaranteed the same level of protection guaranteed by the Eighth Amendment.[16] The Court need not decide what potentially lesser standard governs the Fourteenth Amendment because, as discussed below, under either constitutional guarantee the Court would **DENY** Defendants' motion for summary judgment on the Fourteenth Amendment claims.

As an initial matter, the Court notes this was a relatively close call. However, after watching the video, the Court concludes the Plaintiff has created a genuine dispute of material fact as to whether his Fourteenth Amendment rights were violated as a pretrial detainee. A quick review of the events that occurred on January 17, 2012, from the video and the parties' allegations is helpful:

> Defendant alleges that Plaintiff was warned multiple times to leaves the camera alone and stop kicking the door of his cell. Plaintiff states he doesn't recall that instruction, but states "anything is possible." (Docket No. 69, Page 111-12.) The video does not give any indication that a warning was given, although admittedly the video does not have audio. At approximately **18.20.19**, Deputy Hill entered the cell and pepper sprayed Plaintiff for the **first time**. (Video of January 17, 2012 Incident.)
>
> After the use of the peppery spray, Plaintiff continued to hit walls, kick the door, and throw water within the cell, allegedly at a speaker box. (*Id.* at 18:24-25.) Deputy Hill then entered the cell and pepper sprayed Plaintiff a **second time**. (*Id.* at **18:25:23**.)

---

[16] Previously, where a Plaintiff did not seek to invoke the potentially broader protections of the Fourteenth Amendment, the Sixth Circuit analyzed the claims under the Eighth Amendment standard. *Griffin*, 604 F.3d 949, 953.

Despite the second use of pepper spray, Plaintiff continued his previous behavior of kicking/hitting the door and hitting the wall. At **18:29:00** Deputy Hill, along with an unidentified person, again enter the cell. Deputy Hill appears to pepper spray Plaintiff a **third time** and then rubs the pepper spray in.

After the incident on 18:29:00, Plaintiff appears to yell through the door. Other than that, Plaintiff does not continue to "misbehave." However, he does strike the door a single time with both of his hands at 18:30:21. Immediately thereafter, Deputy Hill enters the cell and appears deploy pepper spray a **fourth time** and/or rub the pepper spray in. (*Id.* at **18:30:24.**)

Subsequently, Plaintiff reinitiates hitting the door and appears to yell through the door. (*Id.* at 18:31:00–18:31:35.) Deputy Hill then enters the cell and appears to deploy pepper spray a **fifth time** and/or rubs the pepper spray in. (*Id.* at **18:35:00**.)

In deciding whether a constitutional violation has in fact occurred, the Court must decide whether the force is imposed for the purpose of punishment or whether it is but an incident of some other legitimate government purpose. *Bell v. Wolfish,* 441 U.S. 520, 538 (1979). If a particular condition or restriction of pretrial detention is reasonably related to a legitimate governmental objective, it does not, without more, amount to "punishment." *Id.* at 539. If a court concludes that the officer's use of force was merely to punish the offender and did not serve some other legitimate governmental objective, the officer may have exercised excessive force in violation of the Fourteenth Amendment. *Id.* at 539 n. 20. Retribution and deterrence are not legitimate nonpunitive governmental objectives. *Id.*

In *Leary v. Livingson County,* Judge Clay further described the Fourteenth Amendment excessive force analysis as follows:

The examination of the totality of the circumstances includes an inquiry into the alleged perpetrator's state of mind. The absence of

a clear intent to punish, however, is not fatal to a detainee's § 1983 excessive force claim. Rather, absent a showing of an express intent to punish on the part of detention facility officials, that determination generally will turn on whether an alternative purpose to which the use of force may rationally be connected is assignable for it, and whether it appears excessive in relation to the alternative purpose assigned to it. An intent to punish a pretrial detainee may be inferred from the use of force in the absence of any penological justification

528 F.3d 438, 451-52 (6th Cir.2008) (Clay, J., dissenting) (internal quotations omitted).[17]

There is a *de minimis* level of imposition of force with which the Constitution is not concerned. *Leary v. Livingston Cnty.*, 528 F.3d 438, 443-45 (6th Cir. 2008). However, the behavior here went beyond that *de minimis* level with which the Constitution is not concerned. Specifically, Plaintiff alleges he still had some burning and tingling effects from the sprayings two months later. (Docket No. 69, Page 31.) Plaintiff also appears to claim mental pain and suffering and physical pain from the incident, although he never took medication to treat this pain. *Id.* at 36-38. He also alleges he had to wear tree cutting glasses for his job two months after the sprayings because of how bad the light hurt. *Id.* at 38. Furthermore, the Court notes that *Leary* was an "unusual" case where the claimant actually stated the defendant's actions "didn't hurt or nothing." *Id.* at 445. Taking the facts in the way most favorable to the Plaintiff, there is a genuine dispute as to whether this was a "minor touching" which the Constitution is not concerned with. *Id.*

---

[17] Although this excerpt comes from the dissent, the Court finds the legal standard to be applicable, as the majority and dissent differed only on how the facts of that case applied to the law. *See Leary,* 528 F.3d at 452 ("The majority, however, finds that Plaintiff cannot establish a constitutional violation."); *Scherzinger v. Bolton*, 2013 WL 3166163, *5 (W.D. Ky. June 20, 2013).

The Court appreciates that implicit in the qualified immunity doctrine is the recognition that governmental officials, acting reasonably, may err. *Dunigan v. Noble,* 390 F.3d 486, 492 (6th Cir. 2004). The concept of immunity acknowledges that it is better to risk some error and possible injury from such error than not to decide or act at all. *Id.* There are two steps to a qualified immunity analysis. First, a court must consider whether taking the facts in the light most favorable to the party asserting the injury, do the facts show the officer's conduct violated a constitutional right? *Id.* (*citing Saucier v. Katz*, 533 U.S. 194, 201 (2001)). In this case, the Court finds they do. Second, if a violation could be made out, the next step is to ask whether the right was clearly established.[18] *Id.* "The key determination is whether a defendant moving for summary judgment on qualified immunity grounds was on notice that his alleged actions were unconstitutional." *Grawey v. Drury*, 567 F.3d 302, 313 (6th Cir. 2009). The Court finds the right to be free from excessive force under these circumstances was clearly established.[19] *See, e.g., Grawey*, 657 F.3d at 313 (finding plaintiff had a clearly established constitutional right not to be pepper sprayed if he submitted to police authority). There is a genuine dispute of material fact as to whether Deputy Hill acted reasonably. Therefore, Deputy Hill is not entitled to qualified immunity.

The Court finds that Plaintiff has presented sufficient evidence to create a genuine dispute of material fact as to whether Deputy Hill's actions were intended to

---

[18] "Some panels of the Sixth Circuit have employed a third step requiring the court to determine whether the plaintiff has offered sufficient evidence to indicate that what the official allegedly did was objectively unreasonable in light of the clearly established constitutional right." *See, e.g., Feathers v. Aey,* 319 F.3d 843, 848 (6th Cir. 2003); *Sample v. Bailey,* 409 F.3d 689, 696 (6th Cir .2005). In excessive force cases, however, because the defendant's conduct must have been objectively unreasonable to find a constitutional violation, *Graham v. Connor,* 490 U.S. 386, 395 (1989), the third step is redundant. Thus, qualified immunity in excessive force cases is a two-step analysis. *Grawey v. Drury,* 567 F.3d 302, 309 (6th Cir. 2009)

[19] Notably, Defendants do not appear to argue that the right was not clearly established.

punish Plaintiff in violation of the Fourteenth Amendment's prohibition of excessive force.[20] Specifically, Plaintiff has alleged facts that have created a genuine dispute as to whether the amount of pepper spray used was reasonable, whether some of the sprays— particularly the fourth spray—were in response to any actual misbehavior, whether jail guidelines on using pepper spray were complied with, and finally whether warnings were given before the use of pepper spray. Consequently, the Court will **DENY** Deputy Hill's motion for summary judgment on Plaintiff's Fourteenth Amendment claims.

In making this decision, the Court found significant that it appears that Plaintiff was pepper sprayed <u>five times</u> within a *fifteen minute span*.[21] (*See* Video of January 17, 2012 Incident, 18:20:19–18:35:00.) Furthermore, it appears three of these sprayings also involved Deputy Hill rubbing the spray in, presumably to increase its effectiveness. While some of these spraying were likely constitutionally permissible because they were a good-faith effort to restore discipline, the Court notes that Plaintiff's misbehavior was waning as the pepper sprayings became more frequent. *See Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004).

Particularly troublesome is the sequence of events between 18:29:00 and 18:30:30, a span of a minute and a half. At 18:29:00 Plaintiff was pepper sprayed for the third time. Although clearly irritated, Plaintiff's behavior is waning at this point as the pepper spray appears to be taking effect. The only conceivable "misbehavior" after the 18:29:00 third spraying is Plaintiff striking the door <u>once</u> with both his hands.

---

[20] The Court notes that whether or not "the force used was applied in a good-faith effort to maintain or restore discipline, not to maliciously cause pain" is unclear and therefore a question for the jury. *Jennings v. Mitchell*, 93 F. App'x 723, 725 (6th Cir. 2004); *see Hudson v. McMillian*, 503 U.S. 1, 5-6 (1992).
[21] For purposes of defending a summary judgment motion the Court must accept Plaintiff's reasonable construction of the facts.

Notably, this striking appears to be with much less force than his previous strikes, which often were karate style running kicks. Immediately after this single door strike, at 18:30:30, Deputy Hill then enters and pepper sprays Plaintiff a fourth time. Deputy Hill also appears to rub in the pepper spray. At this point, the fourth pepper spraying, the Court believes there is a genuine dispute of material fact as to whether the purpose was for "punishment" rather than some legitimate governmental objective.

Plaintiff also has alleged that pepper spray was used in violation of jail guidelines:

> OC Spray shall be used as follows
> 1. OC shall not be used on an inmate except to
>     a. Prevent serious injury to self or another
>     b. Prevent loss of life
>     c. Prevention of escape
>     d. Self protection
>     e. Protection of Third Party
>
> * * *
>
> 3. If possible, before using OC spray, the inmate shall be warned that unless he complies with the deputy's directives he shall be sprayed.
>     a. OC spray shall be dispensed in an amount sufficient to achieve its intended purpose.

(Docket No. 59-1, Jail Guidelines on Pepper Spray.) Defendants claim the spray was used to "prevent serious injury to self or another" because Plaintiff was a threat to himself and to any officer that wished to enter the cell. The Court finds that there is a genuine dispute of material fact, at least as to the fourth pepper spray, as to whether the

pepper spray was actually used to "prevent serious injury to self or another" under the jail guidelines.[22]

Defendants cite a plethora of cases which they argue stand for the proposition that a short burst of pepper spray is not disproportionate to the need to control an inmate who failed to obey an order.[23] *See, e.g., Clay v. Henderson County Jail*, 2010 WL 3341478, *3 (W.D. Ky, Aug. 24, 2010); *Jennings v. Mitchell*, 93 Fed. App'x 723, 725 (6th Cir. 2004). However, the Court notes that all these cases involve a single shot of pepper spray. Furthermore, many of them involve more dangerous situations than a detainee inside a prison cell. In this case, Plaintiff was shot with pepper spray *five* times and three of those times also appear to involve Deputy Hill rubbing in the pepper spray, presumably to increase its effectiveness. Plaintiff alleges he was not given a warning and was not even given an order, although admittedly it is obvious he should not have been striking the camera, hitting the walls, and kicking the door.[24]

The Court is not unsympathetic to the situation in which Deputy Hill was placed. Plaintiff was an extremely difficult pretrial detainee and arguably at the early stages of the pepper spray incidents put himself and government employees who wished to enter the cell in danger. Even if one were to believe Plaintiff's assertions that he did not receive any warnings, he would have realized after the first pepper spraying that continued misbehavior would be accompanied by additional sprayings. However, as

---

[22] The Court also notes there is a genuine dispute as to whether or not the pepper spray used was reasonable.
[23] The Court notes that it is in dispute if an order was actually given, as Plaintiff states he doesn't recall one being given, although he admits it is possible he just didn't hear it.
[24] The Court notes to some extent the video supports this assertion by Plaintiff. Particularly with respect to the first spraying, Deputy Hill quickly throws open the door and immediately begins spraying Plaintiff. It seems that the logical time for a warning would have been to open the door, warn Plaintiff, and *then* to spray Plaintiff if he refused to cooperate.

Plaintiff's behavior was waning and there had been a prior pepper spraying within a minute and a half, the Court believes there is a genuine dispute of material fact as to whether the fourth pepper spraying was for punishment purposes, rather than a legitimate government objective. *See, e.g., United States v. Budd*, 496 F.3d 517, 531-32 (finding that defendant violated inmate's Eighth Amendment rights by slamming inmate's head against steel frame of window because there was no evidence that inmate was engaging in physically threatening conduct and "being obnoxious does not justify the use of force."). Therefore, it is for a jury to decide whether Deputy Hill acted appropriately. Accordingly, the Court will **DENY** Defendant Hill's motion for summary judgment as to the Fourteenth Amendment claim.

i. <u>Supervisor Liability Based on Fourteenth Amendment Claims as to Jailer Hazle</u>

While the Court finds that Plaintiff has created a genuine dispute of material fact as to whether Defendant Hill violated his Fourteenth Amendment rights, the context is completely different when it comes to Defendant Hazle. The Court notes that Hazle was not present when Plaintiff was pepper sprayed and did not learn of the incident until sometime later.

Under § 1983, a supervisor is not liable for a constitutional deprivation, unless the supervisor "either encouraged the specific incident of misconduct or in some other way directly participated in it."• *Everson v. Leis,* 556 F.3d 484, 495 (6th Cir. 2009) (quoting *Shehee v. Luttrell,* 199 F.3d 295, 300 (6th Cir. 1999)). Therefore, the Plaintiff must prove the supervisor at least implicitly authorized, approved, or knowingly acquiesced in the unconstitutional conduct of the offending officer. *Id.* Supervisor

liability cannot attach where the allegation of liability is based upon a mere failure to act. *Gregory v. City of Louisville,* 444 F.3d 725, 751 (6th Cir. 2006) (quoting *Bass v. Robinson,* 167 F.3d 1041, 1048 (6th Cir. 1999)).

In this case, Jailer Hazle was not present when Plaintiff was pepper sprayed and did not learn of the incident until sometime later. Plaintiff has not alleged a failure to train, policy of failing to discipline officers for prior unconstitutional violations, or other theory that would permit § 1983 supervisory liability. *See, e.g.*, *Gregory v. City of Louisville,* 444 F.3d 725, 751-52 (6th Cir. 2006) (stating liability must be based upon more than a mere failure to act). As a result, the Court will **DENY** Defendant's motion for summary judgment on this claim.

IV.   Plaintiff's Remaining 42 U.S.C. § 1983 Claims

Section 1983 does not confer substantive rights but merely provides a means to vindicate rights conferred by the Constitution or laws of the United States. *Aldini v. Johnson*, 609 F.3d 858, 864 (6th Cir. 2010). As will become apparent, Plaintiff's remaining § 1983 claims are without merit and clearly inapplicable because there is no genuine dispute of material fact that a Constitutional right was violated.

a.   First Amendment Claims

Plaintiff alleged in his Complaint that he was pepper sprayed while sitting down and being quiet ("passive resistance"). This claim is not supported by the video (Plaintiff was standing each time he was pepper sprayed), which shows Plaintiff

actively pacing, hitting the camera, kicking the door, and hitting the walls.[25]  Plaintiff has not explained how Deputy Hill's response to his behavior was a violation of his First Amendment rights. [26]  Accordingly, the Court will **GRANT** the Defendants summary judgment on the First Amendment claims.

      b.   Fifth Amendment Claims

The Fifth Amendment restricts the powers of the federal government and does not apply to state actions.  *Gideon v. Wainwright*, 372 U.S. 335, 340-41 (1963).  Plaintiff has made no claims regarding the powers of the federal government.  Defendants Hazle and Hill are *county* jail officials.  Therefore, there is no viable Fifth Amendment claim.  Accordingly, the Court will **GRANT** Defendants' motion for summary judgment and dismiss Plaintiff's Fifth Amendment claims.

      c.   Sixth Amendment Claims

The Sixth Amendment relates to providing persons accused of committing crimes the right to a speedy trial by an impartial jury, the right to be confronted with witnesses against him, the right to have compulsory process for obtaining witnesses in his favor, and the right to have the assistance of legal counsel for his defense.  Plaintiff has never explained or developed how he believes the Defendants violated the Sixth Amendment.  Furthermore, Plaintiff has not produced any evidence that would support such a claim, even for purposes of defending a motion for summary judgment.  As a

---

[25] Although Plaintiff alleged singing in relation to the May 22, 2011 incident, the Court notes the video does not show any evidence of singing as to the January 2012 incident.

[26] The Court notes that Jailer Hazle was not present when Plaintiff was pepper sprayed and did not learn of the incident until sometime later.

result, the Court will **GRANT** Defendants' motion for summary judgment on the Sixth Amendment claims.

     d.   <u>Ninth Amendment Claims</u>

The Ninth Amendment "does not confer substantive rights in addition to those conferred by other portions of our governing law." *Gibson v. Matthews*, 926 F.2d 532, 537 (6th Cir. 1991). Consequently, the Ninth Amendment "has never been recognized as independently securing any constitutional right, for purposes of pursuing a civil rights claims." *Strandberg v. City of Helena*, 791 F.2d 744, 748 (9th Cir. 1986). Accordingly, the Court will **GRANT** Defendants' motion for summary judgment on the Ninth Amendment claims.

     e.   <u>Tenth Amendment Claims</u>

The Tenth Amendment to the United States Constitution provides that "[t]he powers not delegated to the United States by the Constitution, nor prohibited by it to the States are reserved for the States respectively, or to the people." Plaintiff has never explained or developed how he believes the Defendants violated the Tenth Amendment. Furthermore, Plaintiff has not produced any evidence that would support such a claim, even for purposes of defeating a motion for summary judgment. Accordingly, the Court will **GRANT** Defendants' motion for summary judgment as to Plaintiff's Tenth Amendment claim.

V.    <u>Plaintiff's 42 U.S.C. §1985 Claims</u>

Plaintiff also alleges that Defendants violated his constitutional rights in violation of 42 U.S.C. § 1985. However, as Defendants discuss in their motion for summary judgment, the first two sections are not applicable to Plaintiff's situation. (Docket No. 67, Page 13-14.) Therefore, the only possible basis for Plaintiff's claim would be Section 3. However, Plaintiff has not produced any evidence of a conspiracy or class-based discriminatory animus, which is required under that Section. Accordingly, the Court will **GRANT** Defendants' motion for summary judgment as to Plaintiff's claims under 42 U.S.C. § 1985.

VI.    <u>State Law Claims</u>

     a.   False Imprisonment

Plaintiff stated that his claims regarding false imprisonment related only to Defendant Judge Telle.[27] (Docket No. 69, Page 28-30.) As a result, to the extent Plaintiff has appeared to assert claims of false imprisonment against Defendants Hazle or Hill, the Court will **GRANT** summary judgment to Defendants and dismiss these claims.

     b.   Unlawful Restraint

There is no cause of action for unlawful restraint. (Docket No. 67, Page 19.) It appears this claim is related to Plaintiff's prior claim against Judge Telle that he was kidnapped as a result of the arrest because the charges against him were "bogus."

---

[27] In any event, the Court notes that Plaintiff could not make a cognizable claim of false imprisonment against Defendants.

Therefore, this claim appears to only apply to the acts of Judge Telle, who has already been dismissed from this case. Accordingly, this claim must be dismissed and summary judgment **GRANTED** to Defendants on this claim.

    c.  Assault and Battery

"Assault is a tort which merely requires the threat of unwanted touching of the victim, while battery requires an actual unwanted touching." *Banks v. Fritsch,* 39 S.W.3d 474, 480 (Ky. Ct. App. 2001). The Sixth Circuit has held that where actions of Jail personnel are held to be objectively reasonable under § 1983, a plaintiff cannot prove a common law assault and battery based on the same actions. *See Atwell v. Hart Cnty., Ky.*, 122 F. App'x 215, 219 (6th Cir. 2005); *Fultz v. Whittaker*, 261 F. Supp. 2d 767, 783 (W.D. Ky. 2003); *Pursley v. Kitchens*, 2008 WL 655995, *4 (W.D. Ky. March 7, 2008) (stating because the Court has "already determined that the defendant's actions were objectively reasonable in the § 1983 context, the Court further concludes that the Plaintiff cannot prove a claim under Kentucky law."). Where summary judgment is denied on constitutional theories brought under § 1983, claims of official immunity under *Yanero* and its progeny fail as well.[28] *See Toon v. City of Hopkinsville*, No. 5:09–CV–37, 2011 WL 1560590, *8 (W.D. Ky. Apr. 14, 2011).

---

[28] Defendant Hill argues he falls under the purview of qualified official immunity protection as an agent of the government for purpose of state law claims. *Yanero* establishes the standard for qualified official immunity under Kentucky state law:

> Qualified official immunity (what officers enjoy when sued in their individual, rather than official, capacities) applies to negligent performance by a public officer or employee of (1) discretionary acts or functions, *i.e.*, those involving the exercise of discretion and judgment, or personal deliberation, decision, and judgment; (2) in good faith; and (3) within the scope of the employee's authority.

*Yanero v. Davis*, 65 S.W.3d 510, 522 (Ky. 2001). As discussed above, where summary judgment is denied on constitutional theories under § 1983, claims of official immunity under *Yanero* fail as well. In any event, Plaintiff has alleged a genuine dispute as to whether Defendant Hill was "in good faith" concerning the January 17, 2012 incidents.

Since Plaintiff has established a claim in the § 1983 context against Defendant Hill, it follows that he can also assert state law claims of assault and battery against Defendant Hill. Accordingly, Defendant Hill's motion for summary judgment will be **DENIED** as to the assault and battery claims. As to Defendant Hazle, however, Plaintiff cannot assert claims of assault and battery and therefore summary judgment will be **GRANTED** to Defendant Hazle on these claims.

Plaintiff's Motion for Summary Judgment (Docket No. 63)

Plaintiff alleges that he was pepper sprayed five times while locked in a cell during a very short period of time. He alleges the spraying was to punish/hurt Plaintiff, and not according to jail guidelines. While Plaintiff's motions for summary judgment have previously been denied because they were not supported by evidence in the record, Plaintiff now relies on the jail surveillance video and jail guidelines concerning the use of pepper spray. Although at the time of the filing of Plaintiff's third motion for summary judgment his deposition had not been taken, Plaintiff's deposition has now been taken.

However, despite this new evidence, the Court finds Plaintiff is not entitled to summary judgment. For the reasons discussed above concerning Defendant's motion for summary judgment, the Court finds there is a genuine dispute as to material fact as to what exactly transpired on January 17, 2012, and as to whether those events violated Plaintiff's constitutional rights—specifically his Fourteenth Amendment right as a pretrial detainee to be free from excessive force. As a result, the Court will **DENY**

Plaintiff's motion for summary judgment. Whether or not Plaintiff's constitutional rights were violated is a question for a jury to decide, not for this Court. The video supports both parties' sides of the story and leaves genuine issues of material fact for the jury to resolve.

CONCLUSION

For these reasons, and consistent with the Court's conclusions above,

IT IS HEREBY ORDERED as follows:

(1) **IT IS HEREBY ORDERED** that Defendant Hazle's motion for summary judgment is **GRANTED** as to all claims asserted against him.

(2) **IT IS HEREBY ORDERED** that Defendant Hill's motion for summary judgment is **GRANTED in part**, as to all claims other than the Fourteenth Amendment excessive force, assault, and battery claims against him in his individual capacity, and **DENIED in part**, as to the Fourteenth Amendment excessive force, assault, and battery claims.

(3) **IT IS HEREBY ORDERED** that Plaintiff's motion for summary judgment is **DENIED**.

(4) The claims remaining for jury review are the Fourteenth Amendment excessive force claim, the state law assault claim, and the state law battery claim against Defendant Hill in his individual capacity.

IT IS SO ORDERED.

Date:

cc: Counsel

Zachary Amos Lamb
P.O. Box 153
New Concord, KY 42076